**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| JAMES KIETH DAWSON, | : | Civil No. 11-2779 (RBK) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **MEMORANDUM  OPINION** |
| | : | **AND   ORDER** |
| NJ STATE TROOPER | | |
| BARRACKS  et al., | : | |
| | : | |
| Defendants. | : | |

IT APPEARING THAT:

1.      Plaintiff submitted for filing his civil Complaint, accompanied by his in forma pauperis

application.  See Docket Entry No. 1.  Based on Plaintiff's affidavit of indigence and the

absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant

Plaintiff's application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a), and

order the Clerk to file the Complaint.  At this time, the Court must review the Complaint

to determine whether it should be dismissed as frivolous or malicious, for failure to state

a claim upon which relief may be granted, or because it seeks monetary relief from a

defendant who is immune from such relief.

2.      The Complaint is drafted in a rather patchy fashion obstructing clear understanding of

Plaintiff's challenges.  See Docket Entry No. 1.  The best this Court can surmise,

Plaintiff's allegations appears to be as follows:

    a.      Pursuant the Megan Law, Plaintiff, a convicted sex offender, is subject to

registration requirement in the communities where he elects to reside.

b.      On October 8, 2010, Plaintiff allegedly went to a certain law enforcement office in order to register as a sex offender, seemingly in connection with Plaintiff's change of address or, perhaps, his release from confinement.  According to the Complaint, when Plaintiff announced to Officer Barracks that Plaintiff wished to register, without elaborating what type of registration Plaintiff had in mind, Officer Barracks asked Plaintiff "Register for what?"  Plaintiff asserts that Officer Barracks kept asking this question merely to taunt Plaintiff, since Plaintiff speculates that Officer Barracks had to know that Plaintiff wished to register as a sex offender.   Plaintiff asserts that he felt too embarrassed to state that he wished to register as a sex offender because there was a woman and her children within an audible distance (in the lobby of the office), and Plaintiff felt uneasy about the social stigma that this woman might apply to him upon hearing that he wished to register as a sex offender.  Correspondingly, the Complaint asserts that Plaintiff left without disclosing his intentions to register as a sex offender.

c.      The Complaint also alleges that Plaintiff returned to the same law enforcement office a week later having, allegedly, the same intentions, i.e., to register as a sex offender.  According to the Complaint, Plaintiff went to the front desk where he encountered another officer, Officer Stadoli, to whom Plaintiff analogously announced that he wished to register, without elaborating what registration Plaintiff had in mind.  Plaintiff maintains that Officer Stadoli also taunted Plaintiff because Officer Stadoli analogously asked Plaintiff with regard to what Plaintiff wished to register and advised Plaintiff that the Department of Motor

Vehicles was in another building.  According to the Complaint, when Plaintiff finally brought himself to disclose to Officer Stadoli that he wished to register as a sex offender, Officer Stadoli asked Plaintiff "boy or girl?" – seemingly referring to the gender of the victim of the crime of which Plaintiff was convicted; Plaintiff asserts that Officer Stadoli erroneously informed Plaintiff that such information was needed in order to select a proper registration form.[1]  Plaintiff speculates that Officer Stadoli's questions were intended to mock or embarrass Plaintiff; Plaintiff also asserts that – being, allegedly, embarrassed – Plaintiff left again without submitting his registration.

d.     It appears that Plaintiff never tried to process his sex offender registration after that point in time, since Plaintiff asserts that he was eventually charged with a violation of the registration requirement, and he speculates that he might be sentenced to eighteen months in prison on these grounds.  Plaintiff attributes his failure to register to the embarrassment caused by Officers Stadoli and Barracks, asserting that their taunting violated his due process rights; Plaintiff seeks monetary damages.

3.     A district court is required to review a complaint in a civil action where the litigant is proceeding in forma pauperis.  Specifically, the court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a

---

[1]  Plaintiff alleges that the registration form is the same, regardless of the gender of the victim; Plaintiff also asserts that Officer Stadoli was not an officer having the capacity to actually process Plaintiff's sex offender registration.  For the purposes of the instant analysis, this Court presumes – without making a factual finding to that effect – that Plaintiff's allegations are true.

claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B).  In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.  Moreover, recently, the Supreme Court clarified the standard for summary dismissal in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), stressing that Rule 8(a)(2) of the Federal Rules of Civil Procedure mandates a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Citing its prior decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible

> claim for relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and common sense.  But
> where the well-pleaded facts do not permit the court to infer more than the
> mere possibility of misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief."  Fed. Rule Civ. Proc.
> 8(a)(2).

Iqbal, 129 S. Ct. at 1949-1950 (citations omitted).  The Court further explained that

a court considering a motion to dismiss can choose to begin by identifying pleadings that,

because they are no more than conclusions, are not entitled to the assumption of truth.

While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations. When there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief.  Id. at 1950; see also Twombly, 505 U.S. at 555, & n.3; Fowler v.

UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  Consequently, the Third Circuit

observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard"

set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that applied to federal

complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires a

district court to conduct the two-part analysis set forth in Iqbal when presented with a

motion to dismiss, specifically:

> First, the factual and legal elements of a claim should be separated.  The
> District Court must accept all of the complaint's well-pleaded facts as true,
> but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].
> Second, a District Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff has a "plausible
> claim for relief." [Id.]  In other words, a complaint must do more than
> allege the plaintiff's entitlement to relief.  A complaint has to "show" such
> an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the
> Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not
> permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at 1949-50].  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

4.   42 U.S.C. § 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach *unless the individual defendant caused or participated in a constitutional deprivation*."  Sheik-Abdi v. McClellan, 37 F.3d 1240, 1248 (7th Cir. 1994) (emphasis supplied).  Here, however, Plaintiff asserts not a constitutional deprivation but acts that might qualify only as ethically unpalatable.  Consequently, the Officers' conduct, as alleged in the Complaint, while not commendable, cannot reach the level of a violation of constitutional magnitude: "the Constitution is not a manual of etiquette, nor is the Court an arbiter of good taste."  King v. Lienemann, 2011 U.S. Dist. LEXIS 21968, at *16 (S.D. Ill. Mar. 4, 2011).  Specifically:

a.   It has been often noticed that "the Due Process rights of [not convicted individuals] are at least as great as the Eighth Amendment protections available to a convicted prisoner," Reynolds v. Wagner, 128 F.3d 166, 173 (3d Cir. 1997) (citation omitted); see also Bell v. Wolfish, 441 U.S. 520, 544 (1979); City of Revere v. Massachusetts, 463 U.S. 239, 244 (1983), and – thus – the Eighth Amendment sets forth the floor for the standard applicable to the claims of persons other than convicted inmates.  See Bell, 441 U.S. at 544.  However, it is undisputed that acts of verbal harassment cannot qualify as violations of the

Eighth Amendment.  See Stepney v. Gilliard, 2005 U.S. Dist. LEXIS 31889, at *19 (N.J.D. Dec. 8, 2005) ("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms.  'Verbal harassment or profanity alone . . . no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983") (quoting Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998), and citing Collins v. Graham, 377 F. Supp. 2d 241, 244 (D. Me. 2005)); see also Robinson v. Taylor, 2005 U.S. Dist. LEXIS 20951, at *8-9 (D. Del. Sept. 26, 2005) ("[M]ere verbal harassment does not give rise to a constitutional violation[; even if it is] inexcusable and offensive, [it] do[es] not establish liability under section 1983) (quoting McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) and citing Moore v. Morris, 116 Fed. App'x 203, 205 (10th Cir. 2004); Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 187-89 (D.N.J. 1993)); Abuhouran v. Acker, 2005 U.S. Dist. LEXIS 12864, at *15 (E.D. Pa. June 29, 2005) ("It is well established . . . that . . . verbal harassment, . . . standing alone, do[es] not state a constitutional claim") (citing Dewalt v. Carter, 224 F.3d 607, 612 (7th Cir. 1999);  Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999);  Maclean v. Secor, 876 F. Supp. 695, 698 (E.D. Pa. 1995)); accord Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979) (dismissing claim that defendant laughed at prisoner and threatened to hang him).

b.     To the degree Plaintiff's claims can be so stretched as to resemble procedural due process challenges, it is self-evident that Plaintiff's allegations fail to state a claim since: (i) the Complaint indicates that Plaintiff was arrested not on the grounds of the Officers' alleged mockery but for his failure to register as a sex offender; and, in any event, (b) Plaintiff's state proceedings based on such failure to register provide Plaintiff with all the process due.

c.     It appears more conceivable that Plaintiff's claims could qualify as a substantive due process challenge.  However, being so construed, Plaintiff's claims are facially subject to dismissal.  In reviews of the conduct of executive officials, only conduct that "shocks the conscience" rises to the level of a substantive due process violation.  See County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). Whether conduct shocks the conscience is a question of law for the court to decide.  See Benn v. Universal Health Sys., Inc., 371 F.3d 165, 174 (3d Cir. 2004).  Here, Plaintiff speculates that Officers asked him about what registration Plaintiff had in mind in order to taunt him and, in addition, maintains that the question about the gender of Plaintiff's victim was asked as mockery rather than in good faith.  However, inappropriate comments, unpalatable jokes, undue teases, unethical taunting, tasteless mockery, etc. cannot, as a matter of law, qualify as a conscience shocking conduct.  See, e.g., Hawkins v. Holloway, 316 F.3d 777 (8th Cir. 2003) (sheriff's repeated verbal threats to kill his employees that were, nonetheless, perceived as a joke cannot amount to a substantive due process violation); Barrington Cove, LP v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1(1st

Cir. 2001) (harsh, callous or impolitic comments cannot satisfy the "shock the conscience" standard); <u>Brown v. Hot, Sexy and Safer Prods., Inc.</u>, 68 F.3d 525, 532 (1st Cir. 1995) (noting that "[t]he threshold for alleging such [verbal-based] claims is high" and dismissing claims that an official made sexually explicit statements and participated in sexually suggestive skits with several minors chosen from the audience while telling the students that they were going to have a "group sexual experience, with audience participation," using profane, lewd, and lascivious language to describe body parts and excretory functions, characterizing the loose pants worn by one minor as "erection wear," encouraging a minor to display his "orgasm face," etc.).

d.   Indeed, the Sex Offender Registration and Notification Act ("SORNA"), operating, effectively, as a federal counterpart of the Megan Law, excuses non-compliance with the registration requirement only in the event the sex offender experiences "uncontrollable circumstances" that prevent his/her registration. <u>See</u> 18 U.S.C. § 2250. Here, in contrast, Plaintiff did not assert any "uncontrollable circumstances": all he alleged was his embarrassment, shyness, hypothetical concern with suffering a social stigma and other forms of his emotional displeasure. However, the United States Constitution and its Due Process Clause do not provide Plaintiff with the right to pleasantries of registration process. Consequently, Plaintiff's claims, as stated, are subject to dismissal.

5.   However, this Court is mindful of Plaintiff's <u>pro se</u> litigant status and cannot rule out the possibility that Plaintiff simply omitted to state facts indicating that he experienced

"uncontrollable circumstances" in the hands of Officers, and these "uncontrollable circumstances" – *regardless of the shyness, embarrassment or other disappointing emotions that might have been experienced by Plaintiffs* – were such that they completely prevented Plaintiff from registering.  Therefore, the Court finds it prudent to allow Plaintiff an opportunity to amend Plaintiff's pleading by stating such omitted facts, if any.

IT IS, therefore, on this ___15th___ day of ___August___, 2011,

ORDERED that Plaintiff's  application to proceed in this matter in forma pauperis is granted; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b), the Clerk of the Court shall forward a copy of this order by regular mail to the Attorney Generals of the State of New Jersey and the warden of the place of Plaintiff's current confinement; and it is further

ORDERED that Plaintiff is assessed a filing fee of $350.00 which shall be deducted from his prison account pursuant to 28 U.S.C. § 1915(b)(2) in the manner set forth below; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b)(1)(A), Plaintiff is assessed an initial partial filing fee and, when funds exist, the agency having custody of Plaintiff shall deduct said initial fee from Plaintiff's prison account and forward it to the Clerk of the Court; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b)(2), until the $350.00 filing fee is paid, each subsequent month that the amount in Plaintiff's prison account exceeds $10.00, the agency having custody of the plaintiff shall assess, deduct from Plaintiff's account, and forward to the Clerk of the Court payments equal to 20% of the preceding month's income credited to Plaintiff's prison account, with each payment referencing the docket number of this action; and it is further

ORDERED that the Clerk shall file Plaintiff's complaint; and it is further

ORDERED that the complaint, Docket Entry No. 1, is dismissed for failure to state a claim upon which relief can be granted.  Such dismissal is without prejudice to Plaintiff's filing an amended complaint elaborating on his claims; and it is further

ORDERED that the Clerk shall administratively terminate this action by making a new and separate entry on the docket reading "CIVIL CASE TERMINATED"; and it is further

ORDERED that administrative termination is not a "dismissal" for purposes of the statute of limitations, and that if this § 1983 case is reopened pursuant to the terms of this Order, it is not thereby subject to the statute of limitations bar, provided the original Complaint was timely.  See Houston v. Lack, 487 U.S. 266 (1988); McDowell v. Delaware State Police, 88 F.3d 188, 191 (3d Cir. 1996); Williams-Guice v. Board of Education, 45 F.3d 161, 163 (7th Cir. 1995); and it is further

ORDERED that Plaintiff may have the above entitled case reopened if, within 30 days of the date of the entry of this Order, Plaintiff filed with the Clerk Plaintiff's amended complaint detailing the facts of his claims in accordance with the guidance provided to Plaintiff in this Memorandum Opinion and Order;[2] and it is further

ORDERED that, in the event Plaintiff timely files his amended complaint, then the Court will enter an order directing the Clerk to reopen the case and will screen the amended complaint on merits; and it is finally

---

[2]  In light of the rather problematic handwriting utilized in Plaintiff's original Complaint, the Court strongly encourages Plaintiff to execute his amended complaint in a clear and readable fashion, perhaps utilizing printed font instead of a script and writing only one string of words on each line, without scribbling and without making any marks on the margins or between the words and sentences, since these features obstruct the Court's understanding of Plaintiff's claims.

ORDERED that the Clerk shall serve this Memorandum Opinion and Order upon

Plaintiff by regular U.S. mail, return receipt requested, together with a blank civil complaint

form.


s/Robert B. Kugler
**Robert B. Kugler**
**United States District Judge**